# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TAMMY RUSSELL, ORLANDO
MARTINEZ, AMANDA ROMERO,
CLAYTON MARTINEZ, LAWRENCE
RIVAS, SR., MARY ESPINO RIVAS,
and all those similarly situated, and as yet
unidentified, together, AS A CLASS,

      Plaintiffs,

v.                                                                No. CIV 12-1171 RB/ACT

JOE DOMINGUEZ,
in his official and individual capacities,
and the CITY OF TUCUMCARI, a political
subdivision of the State of New Mexico,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

On April 1, 2013, Plaintiffs filed an Amended Complaint against Judge Joe Dominguez and the City of Tucumcari, alleging various violations of federal and state law. (Doc. 16). Plaintiffs claim Defendants' illegal conduct caused them injuries. Before the Court is Defendants' Motion to Dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. (Doc. 17).

Jurisdiction arises under 28 U.S.C. §§ 1331 and 1343. For the state law claims, jurisdiction arises under 28 U.S.C. § 1367.  Having considered the submissions and arguments of the parties, the relevant law, and being otherwise fully advised, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion. (Doc. 17).

## Background

This civil action arises out of a dispute over the administration of the Tucumcari Municipal Court. Six named plaintiffs, along with a putative class of similarly situated citizens, seek redress for the Municipal Court's alleged violations of the Constitution and New Mexico law.

Judge Dominguez is the sole judge for the Tucumcari Municipal Court. (Doc. 16 at ¶ 22). As a municipal judge, Judge Dominguez is vested with subject matter jurisdiction over all offenses and complaints brought under the ordinances of the City of Tucumcari. (Doc. 16 at ¶ 19). He has the power to issue summonses and warrants and to punish for contempt. (*Id.*)

The City of Tucumcari ("City") is a local municipal entity and a political subdivision of the State of New Mexico. It employs Judge Dominguez. (Doc. 16 at ¶ 5). Through its agents and employees, the City is responsible for collecting and processing the fines, fees, and costs assessed against municipal court defendants. (Doc. 16 at ¶ 24). The City, through an agreement with the county detention center, is responsible for housing prisoners. (Doc. 16 at ¶ 37).

Plaintiffs allege the Defendants violated their state and federal rights in the following, non-exclusive, ways: (1) imposing improper fines and fees; (2) imprisoning without lawful authority; (3) improperly and illegally charging Plaintiffs for the cost of their unlawful imprisonment; (4) failing to conduct required indigency hearings for Plaintiffs; (5) failing to credit Plaintiffs with "time served" compensation as required by New Mexico statute; and (6) denying access to counsel. (Doc. 16 at ¶¶ 51 - 58). The six named Plaintiffs and the putative class allege that they suffered damages as a result of these illegal actions.

Based on these wrongdoings, Plaintiffs bring six claims against the Defendants. Counts I through III are claims brought under 42 U.S.C. § 1983, alleging violations of Plaintiffs'

constitutional rights. Count I alleges violations of the Plaintiffs' 14th Amendment right to procedural due process. (Doc. 16 at ¶¶ 65 – 72). Count II alleges violations of the Equal Protection Clause of the 14th Amendment. (Doc. 16 at ¶¶ 73 – 78). Count III alleges a violation of the 8th Amendment's prohibition on excessive fines and cruel and unusual punishment. (Doc. 16 at ¶¶ 79 - 87).

The three federal claims have a similar factual predicate, which is described in significant detail in the Amended Complaint. Plaintiffs essentially allege that Defendants imposed penalties arbitrarily, without any necessary procedure, even when Plaintiffs were not found guilty of crimes. Further, Plaintiffs claim these acts were done knowingly, or wantonly and/or recklessly, and caused Plaintiffs harm.

Claims IV through VI are brought under New Mexico state law. Count IV claims violations of the Plaintiffs' procedural due process and equal protection rights as guaranteed by the New Mexico Constitution. (Doc. 16 at ¶¶ 88 - 92). The factual basis for this count is similar to the federal claims. Count V alleges Judge Dominguez was negligent in his execution of his ministerial duties. These ministerial duties include Judge Dominguez's obligations to tabulate the state fees to be charged to individuals coming before the court and to compile and maintain accurate itemized monthly financial reports. According to Plaintiffs, Judge Dominguez's negligence in performing these duties was both the cause in fact and proximate cause of injuries to Plaintiffs. (Doc. 16 at ¶¶ 93 - 97). Count VI alleges the City of Tucumcari was negligent in its duties to provide proper training, supervision, and management of its employee, Judge Dominguez, and that the City's negligence was both the cause in fact and proximate cause of injury to the Plaintiffs. (Doc. 16 at ¶¶ 98 – 100).

In the Amended Complaint, Plaintiffs seek a variety of remedies. First, Plaintiffs request declaratory relief, and seek a judicial declaration that establishes their rights, duties and obligations in relation to Defendants and to the Tucumcari Municipal Court.  (Doc. 16 at ¶¶ 105-109). Second, Plaintiffs request injunctive relief, which enjoins Defendants from collecting certain fees and requires Defendants to allow individuals to perform community service in lieu of payment of monetary fines and fees. (Doc. 16 at ¶ 110). Third, Plaintiffs seek compensatory damages for the injuries caused by the Defendants wrongful acts. (Doc. 16 at ¶ 111 - 112). And, fourth, Plaintiffs ask for attorney's fees and costs. (Doc. 16 at ¶ 113).

The Court also notes that Plaintiffs' Amended Complaint includes another requested remedy. Plaintiffs ask the Court to not impede the availability of certain state law writs requested in their original Complaint filed in state court. (Doc. 16 at ¶¶ 101-104). If this remedy exists, this Court cannot provide it. Whether these state law remedies remain available is within the province of the state court.

On April 24, 2013, Defendants filed their Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 12(b)(6). Defendants separately attack the viability of the federal and state law claims. As to the federal claims, Defendants argue that the claims against Judge Dominguez are barred by the doctrine of judicial immunity. Further, Defendants contend that the City cannot be liable for Judge Dominguez's actions. As to the state law claims, Defendants argue Plaintiffs' claims are not viable for three reasons: (1) they are barred by New Mexico's judicial immunity doctrine; (2) Defendants are immune from suit under the New Mexico Tort Claims Act ("NMTCA"); and (3) they do not comply with the relevant statute of limitations.

**Legal Standard**

I.      **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that plausibly, not merely possibly, entitles the plaintiff to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In considering a motion to dismiss, the court must look within the four corners of the complaint and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted). However, the court need not accept legal conclusions contained in the complaint as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**Discussion**

I.      **Judicial Immunity**

It is well established that judges enjoy complete immunity from "civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Judicial immunity was created out of a concern that "a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* at 355. As a result, "[j]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice." *Id.*

In an action for monetary damages, immunity is overcome in only two sets of circumstances. *Id.* First, a judge is not immune from liability for non-judicial actions, *i.e.,* actions not taken in the judge's judicial capacity. *Forrester v. White,* 484 U.S., 219, 227-229 (1985); *Stump*, 435 U.S. at 360. Second, a judge is not immune when he acts in the complete absence of all jurisdiction. *Stump*, 435 U.S. at at 356-357.

Plaintiffs challenge Judge Dominguez's claim of judicial immunity on three grounds. First, Plaintiffs argue that certain claims against Judge Dominguez relate to ministerial tasks, which are non-judicial in nature. Second, Plaintiffs contend that Judge Dominguez acted outside of his court's jurisdiction. And, third, Plaintiffs assert that judicial immunity only applies to suits brought at law which seek to establish personal liability and to recover money damages. (Doc. 18 at 4). The Court addresses each of these arguments in turn.

### a.   Judge Dominguez's Acts Relate to His Judicial Function

Plaintiffs argue that Judge Dominguez's judicial immunity does not apply to his performance of certain ministerial tasks, because the performance of these duties does not constitute a judicial act.[1]

Yet, contrary to Plaintiffs' assertion, determining whether an act is ministerial is not dispositive in deciding whether an act relates to a judicial function. The test to determine a judicial act comes from *Stump*: "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 288 (citing *Stump*, 435 U.S. at 362.)

---

[1] A ministerial act is one that is essentially clerical in nature. *See* BLACK'S LAW DICTIONARY 996 (6th ed. 1990). Thus, when an official's duty is delineated by a rule or law with such clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial. *See United States ex rel. McLennan v. Wilbur,* 283 U.S. 414, 420 (1931) (indicating that a duty is ministerial if "the obligation to act [is] peremptory, and plainly defined").

Plaintiffs' arguments regarding Judge Dominguez's judicial immunity for ministerial tasks are further rebutted by both New Mexico law and Tenth Circuit precedent. Under New Mexico law, a municipal judge must perform certain ministerial tasks. Specifically, the judge is required to file monthly reports and remittances and collect certain fees from parties. *See* N.M.S.A. §§ 35-14-7, 35-14-11. Accordingly, since New Mexico mandates that only a judge can perform these tasks, they are, as a matter of course, functions normally performed by a judge, and are, under *Stump*, judicial acts.

Moreover, while not ruling on this issue directly, the Tenth Circuit has assumed that certain ministerial functions are to be considered judicial actions. For example, in *Valdez v. City and County of Denver*, the Tenth Circuit held that those performing ministerial acts at the direction of a judge are entitled to absolute immunity.[2] 878 F.2d 1285, 1287-88 (10th Cir. 1989). As the court explained in *Valdez*:

> To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes a judge acted improperly is unacceptable. Officials must not be called upon to answer for the legality of decisions which they are powerless to control . . . . [I]t is simply unfair to spare the judges who give them orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a lightning rod for harassing litigation aimed at judicial orders.

*See id.* at 1287-88 (internal citations omitted). Notably, the *Valdez* court assumed that the judge would be protected had he personally executed his own order. Thus, despite the fact that the relevant defendant in our case is a judge, the reasoning of *Valdez* is fully applicable. *See also Whitesel v. Sengenberger*, 222 F.3d 861, 869 (10th Cir. 2000) (holding that even if pretrial service's actions in delivering temporary restraining orders could be characterized as ministerial, they would still be absolutely immune from civil suit).

---

[2] In *Valdez*, the Plaintiff brought charges against officers for wrongful imprisonment. The officers imprisoned the Plaintiff for two weeks based on a local traffic court judge's ruling holding the Plaintiff in contempt. *See Valdez*, 878 F.2d at 1286.

Therefore, even though ministerial, Judge Dominguez's administrative actions were performed in his judicial capacity.

### b.  Judge Dominguez Acted Within His Jurisdiction

Next, Plaintiffs seek to overcome Judge Dominguez's judicial immunity by arguing he took actions beyond the scope of his jurisdiction. Since the Plaintiffs fail to allege an instance where Judge Dominguez acted outside of his jurisdiction, the Court rejects this argument.

The Supreme Court has explained that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump,* 435 U.S. at 356. A "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* (quotation marks omitted). Thus, "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Id.*

Accordingly, when analyzing a defendant judge's actions, Courts must determine whether a judge's actions were within - or merely in excess - of his jurisdictional grant, or completely outside of his jurisdiction. The paradigmatic example of a court acting outside of its jurisdiction was provided in *Bradley v. Fisher*, 80 U.S. 335, 352 (1871). According to the *Bradley* court:

> [I]f a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

*Id.*

The situation noted in *Bradley* closely resembles the current facts, i.e., a judge imposing greater penalties than legally justified. *Id.* Specifically, the *Bradley* court found that if a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, "should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction," the judge's actions would not be outside of his jurisdiction. *Bradley*, 80 U.S. at 352. Similarly, Judge Dominguez's alleged wrongdoings – the improper charging of fines and fees, wrongful imprisonment, etc. – are all consistent with his jurisdictional grant, even if they were performed in error.

Moreover, while Judge Dominguez presides over a court of limited jurisdiction, he has a significantly broader jurisdictional grant than the probate court used as an example in *Bradley*. A municipal court judge has jurisdiction over all offenses and complaints relating to ordinances of the municipality. *See In re Salazar*, 2013-NMSC-007, 299 P.3d 409, 412 (N.M. 2013) (citing N.M.S.A. § 35-14-2 (1978)). In this case, there is no indication Judge Dominguez's actions were based on the law of some other jurisdiction. Thus, since Plaintiffs were all properly brought before Tucumcari Municipal Court, Judge Dominguez acted within his jurisdiction.

In sum, there are simply no facts to support the inference that Judge Dominguez considered cases not within his jurisdictional grant. Considering Judge Dominguez's acts were both judicial in nature and within his jurisdiction, the Court concludes that he is cloaked with the protection of judicial immunity.

### c.   Only Declaratory Relief is Available

Even if compensatory damages are not available against Judge Dominguez, Plaintiffs contend that absolute judicial immunity does not insulate judges from requests for injunctive and

declaratory relief. (Doc. 18 at 7). After reviewing the applicable law, set forth below, the Court determines that only Plaintiffs' request for declaratory relief survives the defense's motion.

Historically, absolute judicial immunity was not a bar to injunctive or declaratory relief against a judge acting within her judicial capacity. *See Pulliam v. Allen,* 466 U.S. 522, 541-42 (1984); *see also Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 735 (1980) (stating that the Supreme Court has "never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief"). However, in 1996, Congress effectively reversed *Pulliam* by enacting the Federal Courts Improvement Act ("FCIA"), Pub. L. No. 104–317, 110 Stat. 3847 (1996) (amending 42 U.S.C. § 1983). *Lawrence v. Kuenhold,* 271 F. App'x 763, 766 n. 6 (10th Cir. 2008). Section 309(c) of the FCIA bars injunctive relief in any section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." If these specific circumstances do not exist in a section 1983 action, absolute judicial immunity bars claims for injunctive relief. *Lawrence,* 271 F. App'x at 766 n. 6.

Thus, the only type of relief available to a plaintiff who sues a judge is declaratory relief. *See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 797 (10th Cir. 2013). But not every plaintiff is entitled to this remedy. First, there must be an actual controversy. *See* 28 U.S.C.A. § 2201. Second, the Court can act only to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004) (McConnell, J., concurring) ("[A] declaratory judgment action involving past conduct that will not recur is not justiciable."); *see also Francis E. Heydt Co. v. United States,* 948 F.2d 672, 676-77 (10th Cir. 1991).

Here, the Court concludes that Plaintiffs have pled sufficient facts to support the availability of declaratory relief. Plaintiffs specify the form of the requested declaratory relief. (*See* Doc. 16 at ¶ 109). There is an actual controversy; Plaintiffs still owe money to the City of Tucumcari. Plaintiffs' request is prospective, asking the Court to establish "the rights and obligations of the parties with respect to the claims" set forth in the Amended Complaint. (Doc. 16 at ¶ 105). Unlike *Lawrence*, where the parties sought to void the judgment of a state court judge, this Court is not asked to adjudicate Judge Dominguez's past conduct. *See Lawrence*, 271 F. App'x at 766. Since Plaintiffs seek a declaration of future rights, and there is an actual controversy, the Plaintiffs' request for declaratory relief is not barred.

## II.     Claims against Judge Dominguez and the City of Tucumcari

In addition to naming Judge Dominguez in his individual capacity, Plaintiffs name both Judge Dominguez in his official capacity and City of Tucumcari as Defendants. The Court's analysis of these two defendants is identical, because a suit against Judge Dominguez in his official capacity is essentially a suit against the City of Tucumcari. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") Accordingly, if the City is not a proper party to the suit, the claim against Judge Dominguez in his official capacity should also be dismissed.

The Supreme Court has established that municipalities may be held liable as "persons" for constitutional violations under 42 U.S.C. § 1983, if the municipality enacts an unlawful policy or an official engages in unconstitutional acts that can be characterized as acts of the municipality itself. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Subsequent Supreme Court cases specify that a plaintiff with claims against a municipality must also "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable

constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citing *Bd. Of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986). The resulting standard requires a plaintiff asserting municipal liability to plead and prove "three elements: (1) official policy or custom, (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 769-770.

Defendants focus their arguments on the first prong of the *Monell* standard, claiming that the City cannot be liable for Judge Dominguez's constitutional violations because he is not a final policy maker. However, they neglect to address alternate avenues of establishing an official policy or custom. While a final decision by a municipal policy maker is one path, an official policy or custom for section 1983 municipal-liability purposes may also be found when there is a formally promulgated policy, a well-settled custom or practice, or deliberately indifferent training or supervision. *See Schneider*, 717 F.3d at 770 (internal citation omitted).

Without deciding whether Judge Dominguez is a municipal policy maker capable of imposing section 1983 liability on the City, the Court holds that Plaintiffs have pled sufficient facts to support the existence of a discriminatory official policy or custom.[3] According to the Complaint, the City of Tucumcari maintains policies that expressly prohibit its municipal court

---

[3] Defendants argue that the Tenth Circuit decided this issue in *Ledbetter v. City of Topeka*, 318 F.3d 1183 (10th Cir. 2003). While it does appear that the *Ledbetter* court was persuaded that municipal judges, generally, are not policymakers, the court included somewhat contradictory language. The court cautioned that "in identifying final municipal policymakers, the courts must examine state laws and local ordinances or regulations to determine where the statutory law places the responsibility for making law or setting policy in a particular area." *Id.* at 1189 (citing *Melton* v. *City of Oklahoma*, 879 F.2d 706, 723 (10th Cir. 1989)). After analyzing Kansas law, the *Ledbetter* court concluded that the municipal judge's disputed actions were done according to state law, and could not be interpreted as promulgating municipal policy. *Id.* at 1190. Because the law is muddled and resolving this issue is not necessary at this stage of the proceedings, the Court need not decide whether Judge Dominguez is a policymaker.

judge from imposing community service in lieu of a fine, and require the judge to collect improper fees and costs, including a "summons" fee and "jail fee." (Doc. 16 at ¶¶ 27-41). These allegations support the inference that the City maintained a formal policy or well-settled custom or practice, which resulted in violations of Plaintiffs' constitutional rights.

Defendants do not challenge the adequacy of the pleadings as to the second two elements of the *Monell* standard. Accordingly, the Court will only briefly discuss these elements.

Plaintiffs claim specific municipal policies violate federal law. The Supreme Court observed in *Brown* that when an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question. *See Brown*, 520 U.S. at 403-404. Here, Plaintiffs argue their 14th Amendment rights were denied as a result of the City's policies. This is sufficient to survive a motion to dismiss.

Consequently, Defendants' request to dismiss the charges against Judge Dominguez in his official capacity and the City of Tucumcari and is denied.

## III.   State Law Claims

Plaintiffs bring three claims against Defendants based on violations of New Mexico law. Defendants argue these charges should be dismissed for three reasons.  First, Defendants contend that the state law claims are also barred by the doctrine of judicial immunity. Second, Defendants argue that they are immune from suit under the New Mexico Tort Claims Act ("NMTCA"). Third, Defendants claim that recovery is barred by the relevant statute of limitations. As discussed below, the Court concludes that neither judicial immunity nor the NMTCA bar Plaintiffs' claims for injunctive or declaratory relief, and that the statute of limitations does not bar suit.

### a.   Judicial Immunity Applies

New Mexico state law recognizes the doctrine of judicial immunity for liability. *See Hunnicutt v. Sewell*, 147 N.M. 272, 277 (N.M. Ct. App. 2009). The doctrine is similar to its federal counterpart. In order to determine whether Defendants are entitled to absolute judicial immunity under New Mexico law, courts must apply a functional test to determine whether the acts alleged by Plaintiff were judicial functions. *See id.*

Here, Judge Dominguez is charged with three violations of New Mexico law. Count IV of the Complaint alleges Judge Dominguez and the City of Tucumcari violated the New Mexico Constitution's Equal Protection and Due Process clauses. Count V alleges Judge Dominguez was negligent in the execution of his ministerial duties. Count VI alleges that the City of Tucumcari was negligent in its supervision and training.

Counts IV and V relate to the same acts as the federal charges against Judge Dominguez. As discussed above, all of these acts, whether or not they are ministerial in nature, are part of Judge Dominguez's judicial function. Accordingly, the Court also determines that judicial immunity bars claims for damages against Judge Dominguez relating to these charges.

However, Count VI relates only to actions taken by the City of Tucumcari in its supervision of Judge Dominguez, and does not apply to any judicial function. Thus, it is not barred by judicial immunity.

Plaintiffs further argue that even if claims for damages are foreclosed by judicial immunity, their claims for injunctive and declaratory relief may proceed. Defendants do not challenge this characterization of New Mexico law, which is wise. Like the federal doctrine, New Mexico's judicial immunity doctrine is rooted in common law. *See Collins on Behalf of Collins v. Tabet*, 111 N.M. 391, 405-06, 806 P.2d 40, 54-5 (N.M. 1991) (Baca, J., dissenting). As

14

discussed above, injunctive relief has historically been available in suits against judges. *See Pulliam,* 466 U.S. at 541–42. Therefore, only Plaintiffs state law claims against Judge Dominguez for damages are barred, and Plaintiffs' requests for injunctive and declaratory relief remain viable.

### b.   Defendants are Immune From Suits for Damages Under the NMTCA

Plaintiffs' state law claims are governed by the New Mexico Tort Claims Act. Under the NMTCA, a "governmental entity" is granted immunity from liability for any tort, except as specifically waived therein. N.M.S.A. § 41–4–4(A) (1978); *see also* N.M.S.A. § 41–4–2(A) (1978) ("[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act.").

In this case, Plaintiffs have not alleged a specific exception to the NMTCA that would provide a basis for damages. Rather, Plaintiffs argue that the NMTCA does not prohibit claims against state actors for injunctive or declaratory relief. The Court agrees. The allowance of injunctive relief is written into the NMTCA. Section 41-4-17 provides that, "Nothing in this section shall be construed to prohibit any proceedings for mandamus, prohibition, habeas corpus, certiorari, *injunction* or quo warranto." N.M.S.A. § 41–4–17(A) (1978) (emphasis added).  As a result, the NMTCA only bars Plaintiffs' claims for compensatory relief. *See El Dorado Utilities, Inc., v. El Dorado Area Water and Sanitation Dist.*, 137 N.M 217, 224 109 P.3d 305, 312 (N.M. Ct. App. 2005).

### c.   Claims are Within the Statute of Limitations

The Amended Complaint traces the named Plaintiffs' injuries from October/November of 2009 through the present. Plaintiffs filed their original Complaint in New Mexico state court on

September 20, 2012. (*See* Doc. 1). Thus, according to Defendants, the NMTCA bars Plaintiffs'

claims, because they did not accrue within the two-year statute of limitations period. *See*

N.M.S.A. § 41–4–15 (1978).[4] In response, Plaintiffs argue their claims are not barred, because

the Defendants continued to engage in wrongful conduct past the accrual date. For the reasons

set forth below, the Court agrees with Plaintiffs' position.

Under New Mexico law, Plaintiffs may avoid the statute of limitations bar if they suffer

from either a successive or continuous injury, which extends into the statute of limitations

period. For successive injuries, the statute of limitations begins to run from the date of each

injury. *Valdez v. Mountain Bell Tel. Co.,* 107 N.M. 236, 755 P.2d 80, 83 (N.M. Ct. App.1988)

(citations omitted); *see also McNeill v. Rice Eng'g & Operating, Inc.*, 2006-NMCA-015, 139

N.M. 48, 55-56, 128 P.3d 476, 483 (N.M. Ct. App. 2006) ("The accrual date is the date of each

particular injury which, for an intermittent injury, is the date of that discrete injury, or for a

continuous injury, each new day.")  However, under a successive injury theory, a plaintiff's

recovery is limited to those injuries incurred within the relevant statute of limitations. *Yurcic v.

City of Gallup*, 2013-NMCA-039, 298 P.3d 500, 507 (N.M. Ct. App. 2013).

"For purposes of determining when the statute of limitations began to run" for an injury

that was of a continuing nature, the court is "concerned only with the point at which the

[plaintiff] knew or should have known that [it] was damaged by" the injury. *LaMure v. Peters*,

122 N.M. 367, 924 P.2d 1379, 1383-84 (N.M. Ct. App. 1996). The Tenth Circuit has similarly

held that "[u]nder the continuing wrong doctrine, . . . where a tort involves a continuing or

repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the

---

[4] New Mexico courts have not answered whether claims for injunctive relief fall under the NMTCA's strict two-year statute of limitations period. Because there is no argument that a shorter statute of limitations period applies, and Plaintiffs' claims are within the NMTCA's two-year statute of limitations period, the Court will proceed as if the two-year statute of limitations period applies.

last injury," but that "the doctrine cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress."[5] *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 (10th Cir. 1996) (quotations omitted).

Plaintiffs have pled sufficient facts to make it plausible that Plaintiffs suffered from either a successive injury or a continuous wrong. Fines were assessed against each Plaintiff well past the accrual date for the statute of limitations. (Doc. 16 at ¶¶ 35 − 36, 51- 64). These fines could be considered either discrete injuries or a continuous harm. If considered a discrete injury, Plaintiffs made allegations that particular injuries occurred within the statute of limitations period. (*See* Doc. 16 at ¶¶ 60iv, 62vi, 63, 64). For the purpose of establishing a continuous wrong, each new day the Plaintiffs wrongfully owed a debt to the Municipal Court restarted the statute of limitations. Since Plaintiffs alleged that, throughout the relevant period, Plaintiffs owed debts to the Tucumcari Municipal Court, they have sufficiently pled a continuous wrong. (Doc. 16 at ¶¶ 51- 64).

The Court also notes that the types of injuries alleged are not easily discoverable for the non-lawyer Plaintiff. While Plaintiffs were surely acutely aware of the significant fines accruing against them, there are no facts to suggest that Plaintiffs knew that these fines were caused by possibly illegal government action. Indeed, without consulting a lawyer, these Plaintiffs had little chance of knowing that the Tucumcari Court Municipal Court's power to impose fines and

---

[5] The Tenth Circuit in *Tiberi* found that New Mexico courts also recognized the continuous wrong doctrine, stating:

> New Mexico courts have consistently considered the applicability of the continuing wrong doctrine in a variety of cases. *See, e.g., Martinez-Sandoval v. Kirsch,* 118 N.M. 616, 884 P.2d 507, 514 (N.M. Ct. App. 1994) (doctrine did not apply where plaintiff sued priest in 1991 for sexual misconduct which ended in 1977); *Valdez,* 107 N.M. 236, 755 P.2d at 84 (recognizing the doctrine); *Ealy v. Sheppeck,* 100 N.M. 250, 669 P.2d 259 (N.M. Ct. App. 1983), *cert. quashed,* 100 N.M. 259, 669 P.2d 735 (N.M. 1983) (doctrine did not apply in malpractice case where physician had not continuously treated plaintiff). Thus, although it has not been applied in every possible case, we believe that New Mexico recognizes the doctrine.

*Tiberi*, 89 F.3d at 1431 n. 4.

imprison was limited in any way. Thus, Plaintiffs have alleged a plausible claim for relief that does not violate the statute of limitations.

**IV.     Conclusions**

In sum, Judge Dominguez is protected by judicial immunity as to all claims against him in his individual capacity. Thus, all federal claims against him for monetary or injunctive relief are barred. Similarly, Plaintiffs' state law claims against him for damages are barred. However, Judge Dominguez's judicial immunity does not bar Plaintiffs' request for declaratory relief, nor does it bar Plaintiffs' request for injunctive relief on their state law claims.

Further, Plaintiffs' claims against Judge Dominguez in his official capacity and the City of Tucumcari are viable. However, the NMTCA bars Plaintiffs' state law claims for damages. Only injunctive and declaratory relief is available for the Plaintiffs' state law claims against Judge Dominguez in his official capacity and the City of Tucumcari.

**THEREFORE,**

IT IS ORDERED that Defendants' Motion to Dismiss, (Doc. 17), is DENIED IN PART and GRANTED IN PART in accordance with the opinion above.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**